United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11    JOSEPH ALLEN MALOOF,              )    No. C 12-01100 EJD (PR)
                                        )
12              Petitioner,             )    **ORDER DENYING PETITION FOR**
                                        )    **WRIT OF HABEAS CORPUS;**
13         v.                           )    **DENYING CERTIFICATE OF**
                                        )    **APPEALABILITY**
14                                      )
      FRANK X. CHAVEZ, Warden,          )
15                                      )
                Respondent.             )
16                                      )
                                        )
17    _____ )

18         Petitioner has filed a <u>pro se</u> petition for a writ of habeas corpus under 28 U.S.C. §

19    2254 challenging his state conviction.  The Court ordered Respondent to show cause as

20    to why the petition should not be granted.  Respondent filed an answer, and Petitioner

21    did not file a traverse although given an opportunity to do so.  For the reasons set forth

22    below, the Petition for a Writ of Habeas Corpus is **DENIED**.

23

24                          **BACKGROUND**

25         Petitioner and codefendant Norman Hansen entered a plea agreement in Santa

26    Clara County Superior Court for multiple counts arising from their fraudulent operation

27    of three travel agencies.  On November 10, 2010, the California Court of Appeal

28    affirmed Petitioner's judgment, (Ans. Ex. 8), and on December 13, 2010, denied a

Order Denying Petition; Denying COA
N:\Pro - Se & Death Penalty Orders\February 2015\01100Maloof_denyHC.wpd

**United States District Court**

For the Northern District of California

1    petition for rehearing, (Id., Ex. 10).  The California Supreme Court denied a petition for

2    review on March 16, 2011.  (Id., Exs. 11-13.)

3        Petitioner filed the instant federal habeas petition on March 5, 2012.

4                            **FACTUAL BACKGROUND**

5        The California Court of Appeal set forth the following facts[1]:

6            On April 25, 2008, defendants were charged by information
     with embezzlement by trustees ([Pen. Code] § 506[2], count 1); nine
7    counts of failure to provide travel services or make refunds (Bus. &
     Prof. Code, § 17550.14, subd. (a)(1), counts 2, 4, 5, 6, 8, 11, 12, 13,
8    14); three counts of theft or embezzlement from an elder or
     dependent adult (§ 368, subd. (d), counts 3, 7, 9); writing a check
9    with insufficient funds (§ 476a, count 10); unlawful encumbrance of
     a trust account by a "seller of travel" (Bus. & Prof. Code, §
10   17550.15, subd. (c), count 15); two counts of money laundering of
     more than $5,000 (§ 186.10, subd. (a), counts 16, 17), and thefts of
11   funds received as insurance premium (Ins. Code, § 1733, count 18).
     Hansen was additionally charged with presenting a false insurance
12   claim (§ 550, subd. (a)(1), count 19).

13           The information further alleged that Hansen had suffered a
     strike prior conviction.  (§§ 667, subds. (b)-(c), 1170.12.)  As to the
14   embezzlement count, the information alleged that defendants took
     property with a value exceeding $1 million (§ 12022.6, subd. (a)(3)),
15   and with respect to the nine counts of failure to provide travel
     services or refunds that each defendant obtained $1,000 or more
16   within a consecutive 12 month period from all persons, and $400 or
     more from one person in a 12 month period (Bus. & Prof. Code, §
17   17550.19, subd. (b)).  The information also alleged an aggravated
     white collar crime enhancement (§ 186.11, subd. (a)(1), (2)) on the
18   basis that the crimes involved a pattern of felony conduct resulting in
     the taking of more than $500,000.

19
             On May 6, 2008, defendants pleaded guilty to counts 1, 2, 4,
20   5, 6, 8, and 10 through 16.  They also admitted the allegations
     pursuant to section 12022.6, subdivision (a)(3) and Business and
21   Professions Code section 17550.19, subdivision (b).  Hansen
     admitted having a felony strike prior conviction.  All remaining
22   counts and enhancements were dismissed.  Maloof was advised that
     he could be sentenced to a maximum term of 14 years.  Hansen was
23   advised that he faced a maximum term of 28 years in prison unless
     [h]is *Romero*[3] motion was granted, in which case his maximum

24

25       [1]The facts of this case are taken from the California Court of Appeal opinion
26   in *People v. Hansen et al.*, No. H033702 (Cal. App. 6 Dist. Nov. 22, 2010).  (Ans.
     Ex. 8 ("Op").)

27       [2]All further unspecified statutory references are to the California Penal Code.

28       [3]People v. Superior Court, 13 Cal.4th 497 (1996) ("Romero").

**United States District Court**

For the Northern District of California

1    sentence would be 14 years.

2        Hansen's *Romero* motion was granted, and on December 10,
     2008, defendants were each sentenced to a total prison term of 13
3    years.

4        Maloof and Hansen owned and operated, were employed by,
     and/or purchased three related travel agencies: JM Travel Selections
5    (TS), based in Santa Clara County; ITS International Tours (ITS),
     based in Louisiana; and International Grand Tours (IGT), based in
6    Santa Clara County.  From 2003 through 2005, defendants received
     payment[s] from a number of victims totaling in excess of $1.2
7    million for travel services, mostly involving group travel for
     schoolchildren and religious pilgrimages.  The defendants failed to
8    provide the arranged and paid for travel services, and failed to refund
     the monies paid.
9
         During the course of their operations, the defendants
10   repeatedly used funds received from clients to meet other unrelated
     financial obligations, and would attempt to delay the purchase of
11   travel services until a later group of victims could submit payment
     for an unrelated travel service.  The funds deposited by victims were
12   transferred out of the travel agencies' accounts for numerous
     reasons, including but not limited to the following: paying
13   outstanding debts to other creditors; deposits into the defendants'
     personal accounts; purchasing and paying off the debt on personal
14   vehicles, such as Toyota Celica purchased by Maloof's daughter;
     purchasing meals and day-to-day necessities; and purchasing travel
15   services for defendants' family, friends and associates, such as a
     cruise for Hansen's wife and a number of TS employees.
16   Defendants also laundered funds from one company to another,
     using personal accounts and numerous banks to transfer the funds.
17   They also charged some of their victims for travel insurance, but
     failed to purchase any such insurance.  Because the defendants had
18   "a fiduciary responsibility with respect to all sums received for
     transportation or travel services" under Business and Professions
19   Code section 17550.15, subdivision (g), their use of the victims'
     funds for unrelated expenses and outstanding debts constituted
20   embezzlement.

21       As the amount of money defendants owed grew, their scheme
     broke down, as they no longer had enough money on hand to
22   purchase the travel services for which they had received payment.
     At that point, defendants began adding fraudulent surcharges to their
23   bills in an attempt to increase their cash flow.  These surcharges
     included extra fees for "currency fluctuations," despite there being
24   no such fluctuations, as well as "air taxes" and "fuel surcharges"
     supposedly imposed by the airlines, even though no airline tickets
25   were purchased.

26       In all, more than 600 individual victims were harmed by
     defendants' actions.  Defendants failed to provide travel services
27   paid for, failed to honor requests for refunds or provide refunds
     within the time provided by law after cancelling trips or allowing
28   scheduled departure dates to lapse.  On numerous occasions,

Order Denying Petition; Denying COA
N:\Pro - Se & Death Penalty Orders\February 2015\01100Maloof_denyHC.wpd      3

1   defendants would send refund checks to victims, knowing that there
2   were insufficient funds to cover the checks, which would
    subsequently bounce.

3       During the investigation into defendants' actions, Hansen left
    the country for approximately 15 months, without informing his wife
4   and three young children of his whereabouts.  Hansen claimed that
    he was on "sabbatical," and that he "sail[ed] around the
5   Mediterranean Sea in a sailboat he owns."  When the probation
    officer asked how Hansen managed to do this considering he had
6   declared bankruptcy and had lost all of his investments, Hansen
    replied that he had purchased the 27-foot sailboat for $10,000 and
7   "slept and cooked on the boat, so the cost for the trip was minimal."

8       In his interview with the probation department, Maloof
    submitted a lengthy written statement in which he blamed Hansen,
9   who he called a "con artist," for the crimes.

10  (Ans. Ex. 8 at 4-5.)

11                              **DISCUSSION**

12  **I.    Standard of Review**

13      This Court may entertain a petition for writ of habeas corpus "in behalf of a

14  person in custody pursuant to the judgment of a state court only on the ground that he is

15  in custody in violation of the Constitution or laws or treaties of the United States."  28

16  U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996

17  ("AEDPA"), a district court may not grant a petition challenging a state conviction or

18  sentence on the basis of a claim that was reviewed on the merits in state court unless the

19  state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or

20  involved an unreasonable application of, clearly established federal law, as determined

21  by the Supreme Court of the United States; or (2) resulted in a decision that was based

22  on an unreasonable determination of the facts in light of the evidence presented in the

23  state court proceeding."  28 U.S.C. § 2254(d).  The first prong applies both to questions

24  of law and to mixed questions of law and fact, Williams v. Taylor, 529 U.S. 362,

25  384-86 (2000), while the second prong applies to decisions based on factual

26  determinations, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

27      "Under the 'contrary to' clause, a federal habeas court may grant the writ if the

28  state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

Order Denying Petition; Denying COA
N:\Pro - Se & Death Penalty Orders\February 2015\01100Maloof_denyHC.wpd                4

1    question of law or if the state court decides a case differently than [the] Court has on a

2    set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 412-13.  A state court

3    decision is an "unreasonable application of" Supreme Court authority, falling under the

4    second clause of § 2254(d)(1), if the state court correctly identifies the governing legal

5    principle from the Supreme Court's decisions but "unreasonably applies that principle

6    to the facts of the prisoner's case." <u>Id.</u> at 413.  The federal court on habeas review may

7    not issue the writ "simply because that court concludes in its independent judgment that

8    the relevant state-court decision applied clearly established federal law erroneously or

9    incorrectly." <u>Id.</u> at 411.

10       "Under the 'unreasonable application' clause, a federal habeas court may grant

11   the writ if the state court identifies the correct governing legal principle from [the

12   Supreme Court's] decisions but unreasonably applies that principle to the facts of the

13   prisoner's case." <u>Williams</u>, 529 U.S. at 413.  "Under § 2254(d)(1)'s 'unreasonable

14   application' clause, . . . a federal habeas court may not issue the writ simply because

15   that court concludes in its independent judgment that the relevant state-court decision

16   applied clearly established federal law erroneously or incorrectly." <u>Id.</u> at 411.  A

17   federal habeas court making the "unreasonable application" inquiry should ask whether

18   the state court's application of clearly established federal law was "objectively

19   unreasonable." <u>Id.</u> at 409.  The federal habeas court must presume correct any

20   determination of a factual issue made by a state court unless the petitioner rebuts the

21   presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

22       The state court decision to which Section 2254(d) applies is the "last reasoned

23   decision" of the state court.  <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-04 (1991);

24   <u>Barker v. Fleming</u>, 423 F.3d 1085, 1091-92 (9th Cir. 2005).  When there is no reasoned

25   opinion from the highest state court considering a petitioner's claims, the court "looks

26   through" to the last reasoned opinion.  <u>See</u> <u>Ylst</u>, 501 U.S. at 805.  In this case, that is the

27   opinion of the California Court of Appeal on direct review.  (Ans. Ex. 8.)

28       The Supreme Court has vigorously and repeatedly affirmed that under AEDPA,

Order Denying Petition; Denying COA
N:\Pro - Se & Death Penalty Orders\February 2015\01100Maloof_denyHC.wpd                    5

United States District Court
For the Northern District of California

1   there is a heightened level of deference a federal habeas court must give to state court

2   decisions.  See Hardy v. Cross, 132 S. Ct. 490, 491 (2011) (per curiam); Harrington v.

3   Richter, 131 S. Ct. 770, 783-85 (2011); Felkner v. Jackson, 131 S. Ct. 1305 (2011) (per

4   curiam).  As the Court explained:  "[o]n federal habeas review, AEDPA 'imposes a

5   highly deferential standard for evaluating state-court rulings' and 'demands that

6   state-court decisions be given the benefit of the doubt.'"  Id. at 1307 (citation omitted).

7   With these principles in mind regarding the standard and limited scope of review in

8   which this Court may engage in federal habeas proceedings, the Court addresses

9   Petitioner's claims.

10   C.    **Claims and Analysis**

11       Petitioner claims the following grounds for federal habeas relief: (1) the trial

12   court violated his right to due process by considering dismissed counts in imposing

13   consecutive sentences without obtaining a waiver pursuant to People v. Harvey, 25

14   Cal.3d 754 (1979) ("Harvey"); (2) trial counsel was ineffective for failing to object to

15   the Harvey sentencing error; and (3) the trial court violated his right to due process by

16   failing to exercise its informed discretion in sentencing.[4]

17       **1.    Due Process**

18       Petitioner first claims that his right to due process was violated because the trial

19   court improperly relied on dismissed counts to impose fully consecutive sentences in

20   violation of Harvey, 25 Cal.3d 754.

21       It is undisputed that Petitioner accepted the plea bargain offered by the

22   prosecutor, which was to plead guilty to 13 felony counts and admit the excessive

23   taking allegations with no promises about the sentence to be imposed, in exchange for

24   dismissal of the remaining charges.  The trial court advised Petitioner that he could be

25   sentenced to a maximum of 14 years.  (Ans. Ex. 2, Reporter's Transcript ("RT") at 6, 8-

26

27       [4]Petitioner originally raised five claims, but the last two were dismissed for
    failure to exhaust after Petitioner elected to proceed solely on the first three
28   exhausted claims.  (See Docket No. 9 at 2.)

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

9.)  After the trial court found that Petitioner had knowingly and voluntarily waived his

constitutional rights, that there was a factual basis for the plea, and accepted Petitioner's

pleas to each count, the court stated, "Pursuant to the agreement the remaining

allegations and charges will be submitted for dismissal, that to take effect upon

sentencing."  (RT 19.)  There was no <u>Harvey</u> waiver.

   The California Court of Appeal reviewed what occurred during the subsequent

hearing:

> At the sentencing hearing, which took place over three days, two witnesses testified on Hansen's behalf and Maloof spoke at length explaining his version of what happened and in which he placed the majority of the blame on Hansen.  Hansen spoke briefly on his own behalf, stating that he never intended to take anyone's money and that he intended to pursue insurance claims to recoup his clients' funds.  The prosecutor and Hansen's counsel submitted detailed sentencing memoranda to the court.  The prosecutor also presented several taped victim statements to the courts.

> Before pronouncing sentence, the trial court noted that the defendants had presented conflicting versions of what took place, each of them pointing the finger of blame at the other.  "I'm led to believe by Mr. Maloof that along comes Mr. Hansen who has absolutely no knowledge about the travel industry and within a very short period of time swooped in, took over the business, engaged in questionable business practices, defrauded and victimized the very customers that Mr. Maloof had been dealing with for years and there wasn't anything that he could really do about it and prevent that from happening.  [¶]  And then I hear from Mr. Hansen who basically says that even though he's got the type of background in finances that he has that he came in as kind of an innocent dupe and was victimized by Mr. Maloof who had run of his business into the ground by defrauding people for so long that despite everything he did to rectify that situation and help the situation that there's nothing he could do.  [¶]...[¶]...  [E]ach of you have [*sic*] explained to me what the other has done and I'm supposing that the other defendant is probably less culpable and responsible than you claim to be....[¶] What there's no question about in my mind and which nobody can dispute is there are a lot of victims in this case; every kind and of every category, and that's somewhat overlooked."

> The court praised the probation department for preparing an excellent report with multiple letters, each of which the court had read.  The letters, along with the victims' recordings played by the prosecutor, helped the court appreciate the emotional impact of defendants' crimes.  The court noted that many of the victims were young students who worked for money to take the trips in question, teachers whose reputations were damaged when parents accused them of taking the funds, as well as elderly people who lost once in a lifetime opportunities.

**United States District Court**

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The court found that both defendants were "pretty much in the same position as far as the court has considered regarding... their culpability and responsibility so both will be sentenced to exactly the same sentence." The court denied probation, citing "the seriousness of the case, the sophistication and planning that was involved, the large number of victims and the amount of the losses."

In pronouncing sentence, the court "considered both aggravating and mitigating sentencing factors pursuant to [California] Rules of Court [rules] 4.421 and 4.423. In all honesty the court finds that the aggravating factors far outweigh any mitigating factors that would apply. However, due primarily to the fact that this case was resolved early without a trial the court will be considering imposing mid-terms instead of aggravating terms on each count. [¶] The court is going to choose to run consecutive [sentences on] each of the counts[.] I base that primarily on the rule of court that addresses that issue and the recognition that... several charges were dismissed, and the evidence also shows that there are literally hundreds of victims that are not reflected in any of the counts that were pled guilty to. Groups of victims and other victims that were not involved in any so to the extent that you've explained why they are concurrent, I'm not necessarily rejecting that, I'm just indicating that I'm deciding to run the charges – or the sentences consecutive because I feel that the crimes do reflect separate instances of conduct and separate victims or groups of victims." The court then imposed the mid-term sentence of two years on count 1, with a three year enhancement for excessive taking under section 12022.6, for a total of five years. On each of the remaining counts, the middle term was two years, so the court imposed one third the middle term, or eight months, consecutive sentences for a total term of 13 years.

(Op. at 5-7.)

The state appellate court then rejected this claim:

Defendants were initially charged with one count of embezzlement, nine counts of failure to provide travel services or make refunds, three counts of theft or embezzlement from an elder or dependent adult, one count of making a check with insufficient funds, one count of unlawful encumbrance of a trust account by a seller of travel, two counts of money laundering and one count of theft of funds received as an insurance premium. Hansen was also charged with presenting a false insurance claim. They both pleaded guilty to all counts except for the three counts charging theft or embezzlement from an elder or dependent adult, one count of money laundering, and theft of funds received as an insurance premium, and those counts were dismissed. Hansen also did not plead guilty to the charge of presenting a false insurance claim, and that count was also dismissed. Both defendants admitted certain enhancements and Hansen admitted having suffered a strike prior conviction.

Neither defendant raised a *Harvey* objection at the sentencing hearing. It is well-settled that "complaints about the manner in

**United States District Court**

For the Northern District of California

which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal." (*People v. Scott* (1994) 9 Cal.4th 331, 356.)  Thus, defendants' claim has been forfeited. [FN4]  However, even if were to consider it, there is no merit to the contention.

> FN4. At oral argument, after conceding that no such objection was raised below, Maloof's counsel referred the court to a "body of law," cited in his briefs, holding that claim of *Harvey* error is not forfeited by failing to raise it in the trial court.  Maloof's brief cites one case, *People v. Beagle* (2004) 125 Cal.App.4th 415 (*Beagle*), for this point.  In *Beagle*, after the defendant pleaded guilty to a weapons charge in exchange for dismissal of a drug charge and imposition of probation, the trial court imposed both weapon- and drug-related probation condition on the defendant.  After acknowledging that this created a potential *Harvey* violation, the court said, "We are met at the threshold by two issues of waiver.  *First, was possible* Harvey *error sufficiently raised in the trial court to preserve it for appeal?*  We conclude that it was." (*Beagle*, *supra*, at p. 420, italics added.)  Far from saying that *Harvey* error may be raised for the first time on appeal the court in *Beagle* on the contrary appears to assume that it is well-settled that such a claim is forfeited it if is not first raised in the trial court.

In *Harvey*, the California Supreme Court held that, where a plea is entered on condition that other counts be dismissed, it is an "[i]mplicit" term of the plea agreement "(in the absence of any contrary agreement) that defendant will suffer no adverse sentencing consequences by reason of the facts underlying, and solely pertaining to, the dismissed count." (*Harvey*, *supra*, 25 Cal.3d at p. 758.)  However, *Harvey* does not apply where the dismissed counts were "*transactionally related*" to the count to which the defendant pleaded. (*Ibid*.)

The record is clear that the court decided to impose consecutive sentences based on the separate occasions and separate victims involved in the nine counts at issue.  It is true that the trial court mentioned that several charges against the defendants had been dismissed pursuant to the plea bargain, but it made that reference in the context of criticizing the prosecutor's more lenient sentencing recommendation.  The trial court does not discuss the dismissed counts in articulating the reasons why it was imposing consecutive sentences on counts 2, 4, 5, 6, 8, and 10 through 16.  Instead, the trial court explicitly stated that those sentences would run consecutively because the nondismissed counts took place on different occasions and involved separate victims.

Furthermore, defendants cannot establish any prejudice.  The trial court indicated that it considered both aggravating and mitigating sentencing factors but that "the aggravating factors far outweigh any mitigating sentencing factors that would apply."  Despite this, the trial court stated that it would consider imposing mid-term sentences rather than aggravated term sentences "due

1    primarily to the fact that this case was resolved early without a trial."

2        In deciding to run counts consecutively or concurrently, the
3    court may use any circumstance, whether in aggravation or
     mitigation. In this case, the crimes were committed on separate
4    occasions and involved numerous victims, many of whom were
     particularly vulnerable. The manner in which the crimes were
5    committed demonstrated planning, sophistication or professionalism,
     and the defendants took advantage of a position of trust or
6    confidence to commit the offenses. One of the defendants, Hansen,
     had served a prior prison term. Given all of these aggravating
7    factors, there is no reasonable probability that defendants would have
     received a more favorable sentence even assuming there had been a
8    *Harvey* violation.

9    (Op. at 10-13.)

10       Respondent argues that this claim was procedurally defaulted, and if not, it was

11   nevertheless reasonably denied on the merits by the state appellate court. (Ans. at 8-

12   12.) Because the state appellate court proceeded to reject the claim on the merits, the

13   Court assumes that procedural default may not apply and reviews the decision on the

14   merits.

15       Based on the record, the Court finds that the state court's rejection of this claim

16   did not result in a decision that was based on an unreasonable determination of the facts

17   in light of the evidence presented in the state court proceeding. See 28 U.S.C. §

18   2254(d). The state appellate court reasonably determined that the trial court did not

19   impose consecutive sentences based on the dismissed charges: "The record is clear that

20   the court decided to impose consecutive sentences based on the separate occasions and

21   separate victims involved in the nine counts *at issue*." See supra at 9 (emphasis added).

22   The state appellate court also found that the trial court mentioned the dismissed charges

23   only "in the context of criticizing the prosecutor's more lenient sentencing

24   recommendation," i.e., to run concurrent rather than consecutive. (Id.) Furthermore,

25   the state appellate court quoted the trial court's statement from the sentencing hearing:

26   "I'm deciding to run the charges – or the sentences consecutive because I feel that *the*

27   *crimes* do reflect separate instances of conduct and separate victims or groups of

28   victims." See supra at 8. Based on this statement, the state appellate court reasonably

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

1    determined that the trial court "explicitly stated that those sentences would run

2    consecutively because the *nondismissed* counts took place on different occasions and

3    involved separate victims." Id. at 9 (emphasis added).  Respondent has set forth a

4    detailed summary showing that the crimes to which Petitioner pleaded guilty, i.e.,

5    Counts 1, 2, 4, 5, 6, 8, 10, 11, 12, 13, 14, 15 and 16, did in fact involve separate

6    occasions and separate victims.  (See Ans. at 11.)  This is confirmed by the probation

7    report filed under seal in this matter.  (See Docket No. 18.)  Petitioner has failed to

8    show otherwise, having failed to file a traverse.  Accordingly, Petitioner's claim that the

9    trial court improperly relied on dismissed counts to impose fully consecutive sentences

10   is without merit.  The state court's rejection of this claim was neither contrary to, nor

11   involved an unreasonable application of, clearly established Supreme Court precedent

12   or resulted in a decision that was based on an unreasonable determination of the facts in

13   light of the evidence presented in the state court proceeding.  See 28 U.S.C. § 2254(d).

14   Petitioner is not entitled to habeas relief on this claim.

15            **2.      Ineffective Assistance of Counsel**

16           Petitioner's second claim is that trial counsel was ineffective for failing to object

17   to the Harvey sentencing error.  The state appellate court also rejected this claim after

18   rejecting Petitioner's Harvey claim: "For these reasons, we also reject defendants'

19   contention that their defense counsel was ineffective for failing to raise a *Harvey*

20   objection at the sentencing hearing.  The objection was without merit in the first

21   instance, and even if there were any merit to it, defendants were not prejudiced.  (See

22   *People v. Ochoa* (1998) 19 Cal.4th 353, 463 ["Representation does not become

23   deficient for failing to make meritless objections."].)  (Op. at 13.)

24           In order to prevail on a Sixth Amendment ineffectiveness of counsel claim,

25   petitioner must establish two things.  First, he must establish that counsel's performance

26   was deficient, i.e., that it fell below an "objective standard of reasonableness" under

27   prevailing professional norms.  Strickland v. Washington, 466 U.S. 668, 687-88 (1984).

28   Second, he must establish that he was prejudiced by counsel's deficient performance,

**United States District Court**

For the Northern District of California

1    i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors,

2    the result of the proceeding would have been different." Id. at 694.

3        The Strickland framework for analyzing ineffective assistance of counsel claims

4    is considered to be "clearly established Federal law, as determined by the Supreme

5    Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis. See

6    Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011); Williams (Terry) v. Taylor, 529 U.S.

7    362, 404-08 (2000). A "doubly" deferential judicial review is appropriate in analyzing

8    ineffective assistance of counsel claims under § 2254. See Pinholster, 131 S. Ct. at

9    1410-11; Harrington v. Richter, 131 S. Ct. 770, 788 (2011) (same); Premo v. Moore,

10   131 S. Ct. 733, 740 (2011) (same). The general rule of Strickland, i.e., to review a

11   defense counsel's effectiveness with great deference, gives the state courts greater

12   leeway in reasonably applying that rule, which in turn "translates to a narrower range of

13   decisions that are objectively unreasonable under AEDPA." Cheney v. Washington,

14   614 F.3d 987, 995 (9th Cir. 2010) (citing Yarborough v. Alvarado, 541 U.S. 652, 664

15   (2004)). When § 2254(d) applies, "the question is not whether counsel's actions were

16   reasonable. The question is whether there is any reasonable argument that counsel

17   satisfied Strickland's deferential standard." Harrington, 131 S. Ct. at 788.

18       As discussed above, the Court has determined that Petitioner's claim based on

19   Harvey error is without merit because the state appellate court reasonably determined

20   that the trial court did not improperly impose consecutive sentences based on the

21   dismissed charges. See supra at 11. A lawyer need not file a motion that he knows to

22   be meritless on the facts and the law. Put simply, trial counsel cannot have been

23   ineffective for failing to raise a meritless motion. Juan H. v. Allen, 408 F.3d 1262,

24   1273 (9th Cir. 2005); Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996). Because

25   there was no trial court error in sentencing, Petitioner cannot show that the result of the

26   proceeding would have been different had trial counsel made an objection to the

27   sentence based on Harvey. Strickland, 466 U.S. at 694.

28       Because the state court's rejection of Petitioner's claims was not an unreasonable

United States District Court

For the Northern District of California

1    application of Supreme Court precedent or based on an unreasonable determination of

2    the facts in light of the evidence presented in the state court proceeding, Petitioner is not

3    entitled to federal habeas relief on this claim.  See 28 U.S.C. § 2254(d).

4    **3.      Sentencing Error**

5    Petitioner's last claim is that the trial court violated his right to due process

6    because it mistakenly believed that it could impose consecutive sentences of one-third

7    the upper term, and thus failed to exercise informed discretion when it sentenced them

8    to consecutive sentences of one-third the middle term.

9    State sentencing courts must be accorded wide latitude in their decisions as to

10   punishment.  See Walker v. Endell, 850 F.2d 470, 476 (9th Cir. 1987), cert. denied,

11   488 U.S. 926, and cert. denied, 488 U.S. 981 (1988).  Generally, therefore, a federal

12   court may not review a state sentence that is within statutory limits.  See id.  While there

13   are exceptions under the Due Process Clause and the Eighth Amendment, Petitioner's

14   claim does not present such an exception.[5]  Furthermore, "[a]bsent a showing of

15   fundamental unfairness, a state court's misapplication of its own sentencing laws does

16   not justify federal habeas relief."  Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994);

17   see, e.g., Miller v. Vasquez, 868 F.2d 1116, 1118-19 (9th Cir. 1989) (whether assault

18   with deadly weapon qualifies as "serious felony" under California's sentence

19   enhancement provisions, Cal. Penal Code §§ 667(a) and 1192.7(c)(23), is question of

20   state sentencing law and does not state constitutional claim).  Lastly, a federal court

21   may not review a claim that a state court failed to state its reasoning for a particular

22   sentence pursuant to state law when the sentence imposed was clearly within its

23

24   [5]A federal court may vacate a state sentence imposed in violation of due
process; for example, if a state trial judge (1) imposed a sentence in excess of state
25   law, see Walker, 850 F.2d at 476; see also Marzano v. Kincheloe, 915 F.2d 549, 552
(9th Cir. 1990) (plea of guilty does not permit state to impose sentence in excess of
26   state law despite agreement of defendant to sentence), or (2) enhanced a sentence
based on materially false or unreliable information or based on a conviction infected
27   by constitutional error, see United States v. Hanna, 49 F.3d 572, 577 (9th Cir. 1995);
Walker, 850 F.2d at 477; accord Brothers v. Dowdle, 817 F.2d 1388, 1390 (9th Cir.
28   1987) (factual basis required for factors when factors used to aggravate sentence).

discretion.  See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) (failure to

abide by state requirement that trial court state reasons for sentencing consecutively

does not rise to level of federal habeas due process claim), cert. denied, 514 U.S. 1026

(1995); Branch v. Cupp, 736 F.2d 533, 536 (9th Cir. 1984) (same), cert. denied, 470

U.S. 1056 (1985).  This latter claim apparently fails to rise to the level of a

constitutionally protected liberty interest.  This is certainly the case with respect to

Petitioner's claim where the trial court imposed a sentence that was clearly within

statutory limits, notwithstanding any "mistaken belief" on its part.  Accordingly, this

claim is DENIED.

## CONCLUSION

After a careful review of the record and pertinent law, the Court concludes that

the Petition for a Writ of Habeas Corpus must be **DENIED**.

Further, a Certificate of Appealability is **DENIED**.  See Rule 11(a) of the Rules

Governing Section 2254 Cases.  Petitioner has not made "a substantial showing of the

denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Nor has Petitioner

demonstrated that "reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484

(2000).  Petitioner may not appeal the denial of a Certificate of Appealability in this

Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal

Rules of Appellate Procedure.  See Rule 11(a) of the Rules Governing Section 2254

Cases.

The Clerk shall terminate any pending motions, enter judgment in favor of

Respondent, and close the file.

**IT IS SO ORDERED.**

DATED:      2/25/2015

EDWARD J. DAVILA
United States District Judge

United States District Court
For the Northern District of California

Order Denying Petition; Denying COA
N:\Pro - Se & Death Penalty Orders\February 2015\01100Maloof_denyAC.wpd
14